HOCKERSON–HALBERSTADT, INC.,
Plaintiff–Cross Appellant,

v.

PROPET USA, INC., Defendant–
Appellant,

and

Costco Wholesale Corporation,
Defendant–Appellee.

Nos. 02–1259, 02–1304, 02–1341.

United States Court of Appeals,
Federal Circuit.

DECIDED: April 1, 2003.

See also 183 F.3d 1369.

Before MICHEL, SCHALL, and
PROST, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Hockerson–Halberstadt, Inc. ("HHI")
sued Propet USA, Inc. ("Propet") and Co-
stco Wholesale Corporation ("Costco") in
the United States District Court for the
Eastern District of Louisiana for infringe-
ment of U.S. Patent No. 4,322,895
("the '895 patent"). After a jury found
that Propet had willfully infringed the pat-
ent, the district court entered final judg-
ment in favor of HHI against Propet,
awarding HHI a reasonable royalty, en-
hanced damages, attorney fees, prejudg-
ment interest, and costs. *Hockerson–Hal-
berstadt, Inc. v. Nike, Inc.,* No. 91–1720
(Ref. No. 96–3160) (E.D.La. Mar. 6, 2002).
The district court previously had dismissed
HHI's suit against Costco for lack of per-

sonal jurisdiction and venue, and had denied HHI's request for discovery with respect to personal jurisdiction. *Hockerson–Halberstadt, Inc. v. Nike, Inc.,* No. 91–1720 (Ref. No. 00–758) (E.D. La. June 5, 2000) (order dismissing suit for lack of personal jurisdiction and venue) (*"Costco Order"*).

Propet appeals from the district court's judgment that it infringed the '895 patent. For its part, HHI cross-appeals, raising issues relating to damages, attorney fees, prejudgment interest, and expert fees. HHI also appeals the district court's dismissal of its suit against Costco for lack of personal jurisdiction, as well as the court's

denial of its request for discovery. We *affirm-in-part, reverse-in-part, vacate-in-part,* and *remand.*

## DISCUSSION

### I.

HHI is the owner of the '895 patent. The patent is directed to a "Stabilized Athletic Shoe" and discloses a shoe that provides additional stability during running. According to the patent, the midsole design of prior-art shoes did not provide adequate stability. Fig. 2 of the patent, which is reproduced below, illustrates a rear view of such a prior-art running shoe:

PRIOR ART

FIG.— 2

Fig. 2 shows a shoe upper 12 mounted above a sole 14. The sole has a pyramid shaped midsole 16 with outwardly-flaring sides. In such a design, any supination or pronation by the runner compresses the sole, as indicated by the vertical arrows in Fig. 2. This compression results in a lack of stability and control for the runner's heel.

To solve this problem, the '895 patent teaches the use of a support band. The support band 38 is secured to the upper rim of the midsole 32 and the sides of the heel cup 26, as shown in Fig. 6 of the patent, which is reproduced below:

FIG.—6

According to the patent, the support band stabilizes the heel cup. If a runner's heel lands off center, the support band resists flexing to the side. The runner's foot then returns to a more stable position and better absorbs shock. The patent teaches that the support band can be formed "integral with the upper rim of the midsole," as shown in Fig. 6, or can be "a separate piece which is secured as by fusion to the sole during manufacture." '895 patent, col. 3, ll. 14–25.

## II.

### A. *HHI's suit against Propet*

In 1991, HHI filed suit against Nike, Inc., Reebok International, Ltd., Hyde Athletic Industries, Inc., L.A. Gear, Inc., Brooks Shoe, Inc., and Kinney Shoe Corp., alleging infringement of the '895 patent. After the suit was filed, Reebok requested reexamination of the '895 patent. The United States Patent and Trademark Office ("PTO") granted the request and issued a Reexamination Certificate on August 8, 1995.

In 1996, HHI filed suits for infringement of the '895 patent against additional shoe companies, including Converse Inc., and Propet. The district court consolidated those suits with the other suits in which HHI alleged infringement of the '895 patent. In March of 1998, the district court granted summary judgment in favor of Converse, holding that the '895 patent was invalid because HHI had impermissibly broadened the scope of its claims during reexamination. *Hockerson–Halberstadt, Inc. v. Nike, Inc.*, 4 F.Supp.2d 573 (E.D.La.1998). HHI appealed to us. In July of 1999, we reversed the decision of the district court, concluding that the reexamined claims did not encompass subject matter beyond the original claims. *Hockerson–Halberstadt, Inc. v. Converse, Inc.*, 183 F.3d 1369, 1370, 51 USPQ2d 1518, 1519 (Fed.Cir.1999).

HHI's suit against Propet, which was stayed pending HHI's appeal in *Converse*, eventually went to trial in September of 2001. On September 20, 2001, the district court issued an order construing the claims of the '895 patent. *Hockerson–Halberstadt, Inc. v. Nike, Inc.*, No. 91–1720, 2001 WL 1104643 (Ref. Nos. 96–2912 & 96–3160) (E.D.La. Sept. 20, 2001) (order

construing patent) (*"Claim Construction Order"*). Subsequently, after a three-day trial, the jury found that the '895 patent was not invalid and that Propet had infringed the patent willfully. The jury awarded HHI a reasonably royalty of $711,248.75.

Subsequently, upon HHI's motion, the district court granted HHI enhanced damages in the amount of $150,000, attorney fees in the amount of $120,000, costs, and prejudgment interest at the then current prime rate of 4.75 percent. *See Hockerson–Halberstadt, Inc. v. Nike, Inc.,* 192 F.Supp.2d 627 (E.D.La.2002) (order addressing HHI's and Propet's post-trial motions) (*"Order Addressing Motions"*). At the same time, the court denied Propet's motion for judgment not withstanding the verdict, which it treated as a motion for judgment as a matter of law ("JMOL").[1] *Id.* at 628.

HHI also filed a motion for the payment of expert witness fees incurred during discovery. The district court denied the motion, ordering that the fees be taxed as a cost and paid by Propet along with other taxable costs. *Hockerson–Halberstadt, Inc. v. Nike, Inc.,* No. 91–1720 (Ref. No. 96–3160) (E.D.La. Feb. 8, 2002) (order denying expert witness fees) (*"Fees Order"*).

On March 6, 2002, the district court entered final judgment in favor of HHI against Propet, awarding HHI a reasonable royalty in the amount of $711,248.75, enhanced damages in the amount of $150,000, attorney fees in the amount of $120,000, costs, and prejudgment interest at the rate of 4.75 percent from October 11, 1995, the date when infringement began, until the date of judgment. *See*

Hockerson–Halberstadt, Inc. v. Nike, Inc., No. 91–1720 (Ref. No. 96–3160) (E.D.La. Mar. 6, 2002).[2]

### B. *HHI's suit against Costco*

As noted, HHI also sued Costco for infringement of the '895 patent. The district court consolidated that suit with the other suits in which HHI alleged infringement of the patent. Costco filed a motion to dismiss for lack of personal jurisdiction and venue. HHI opposed the motion, arguing that the court had personal jurisdiction, but that if the court determined that HHI had not presented enough facts to support a finding of personal jurisdiction, HHI be given an opportunity to conduct discovery. The district court granted Costco's motion and dismissed HHI's suit against Costco. *Costco Order* at 5–6. In addition, the court denied HHI's request to conduct discovery. *Id.* at 6.

We have jurisdiction over Propet's and HHI's appeals pursuant to 28 U.S.C. § 1295(a)(1). We address Propet's appeal against HHI in Section III, HHI's appeal against Propet in Section IV, and HHI's appeal against Costco in Section V of this opinion.

### III.

Propet appeals the denial of its JMOL motion. We review a grant or denial of a motion for JMOL without deference by reapplying the JMOL standard. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir. 1998) (*en banc*) (citation omitted); Fed. R.Civ.P. 50(a)(1). For matters submitted to and decided by a jury, we will affirm a grant or reverse a denial of JMOL only "if

---

**1.** We refer to Propet's motion for judgment not withstanding the verdict as a motion for JMOL.

**2.** Based on the record before us, it appears that, except for HHI's claims against Propet and Costco, the district court has dismissed HHI's patent infringement claims against the other defendants in the case.

the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Cybor Corp.*, 138 F.3d at 1454, 46 USPQ2d at 1172 (citation omitted). We draw all reasonable inferences in favor of the prevailing party without substituting our view of conflicting evidence for that of the jury. *SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, 225 F.3d 1349, 1355, 55 USPQ2d 1927, 1930 (Fed.Cir.2000) (citation omitted).

Before deciding whether an accused device infringes asserted claims, a court must first construe the claim language to determine the meaning and scope of the claims. *Cybor Corp.*, 138 F.3d at 1454, 46 USPQ2d at 1172 (citation omitted). Claim construction is a question of law that we review *de novo*. *Id.* at 1456, 138 F.3d 1448, 46 USPQ2d at 1174.

Propet argues that the district court erred in its construction of the claims of the '895 patent and that, under the correct construction, its shoes cannot infringe. The claims[3] of the '895 patent are reproduced below, with emphasis added to the limitations at issue in this appeal:

1. An Athletic Shoe comprising a sole having a midsole formed of a resilient force-absorbing material,

an outsole mounted below the midsole, said outsole being formed of a durable material for contact with a surface,

an upper mounted on the sole, the upper having a counter forming a heel cup having exterior sidewalls with lower edges,

*a support band carried on the upper rim of the midsole and secured about the sidewalls of the heel cup,*

said band extending upwardly and merging with the vertical midspan of the heel cup for supporting and stabilizing the heel cup relative to the sole during contact of the sole onto the surface when in use,

*said midsole comprising a forefoot portion and heel portion means, said heel portion means being pyramid shaped in lateral cross section with a lower rim having opposite sides which flare outwardly* to locations which lie sufficiently laterally beyond the lower edges of the heel cup for substantially stabilizing the shoe during initial contact on the surface along one side of the sole,

the opposite sides of the lower rim of the heel portion means having a lateral width greater than the lateral width of the heel cup midspan, and

the midsole and support band having wall means which inclines upwardly from the lower rim of the heel portion means to the heel cup midspan for resisting flexing of the sidewalls of the heel cup relative to the sole during said initial contact on the surface along one side of the sole.

2. An athletic shoe as in claim 1 in which the support band extends forward from the heel cup and merges with the opposite sides of the upper above the midsole for providing support between said opposite sides and the midsole.

3. An athletic shoe as in claim 2 *in which the support band is integral with the midsole.*

When the district court construed the claims of the '895 patent, it noted that both HHI and Propet relied on our decision in *Converse*, the '895 patent, and the Reexamination Certificate to advance their positions on claim construction. *Claim Construction Order* at 2–3. The court noted

---

**3.** Claim 1 was the only claim amended during reexamination.

that, according to HHI, under the correct claim construction, the support band and the midsole may be either one integral piece or two separate pieces. The court observed that, Propet, on the other hand, took the position that the scope of the patent is narrower and that the support band and midsole must be two, separately defined pieces. *Id.* It noted that, according to Propet, HHI's patent "encompasses only shoes that have a clearly-defined pyramid-shaped midsole *and* a separate, well-defined heel band." *Id.* at 3 (emphasis in original). After considering the '895 patent, the Reexamination Certificate, and our decision in *Converse,* the court concluded that the '895 patent is not limited to a two-piece construction. It construed the patent's claims as follows: "Thus, the support band and the midsole may be unitary or in two separate parts. While the patent clearly requires a pyramid-shaped midsole, this shape need not be visible, if the pieces are merged." *Id.* at 5.

■ On appeal, Propet argues that the district court erred in construing the claims of the '895 patent. It asserts that the district court's claim construction is inconsistent with our decision in *Converse* and the prosecution history of the '895 patent, and that the district court's claim construction erases meaningful limitations from claim 1. Propet contends that the claims only cover a sole that has a two-piece construction, i.e., a pyramid-shaped midsole and a separate support band. Specifically, it asserts that the correct construction requires that the pyramid-shaped midsole be visible to the naked eye in a lateral cross section of the sole. Based on this claim construction, Propet argues that because its shoes have a one-piece construction, they can never have a visible pyramid-shaped midsole and, therefore, as a matter of law, cannot infringe the '895 patent. We do not agree with Propet. We think that the district court properly construed the claims of the '895 patent.

As a preliminary matter, we note that *Converse* did not address the issue of claim construction that is currently before us: whether the claims of the '895 patent require that the midsole and support band be made of two separate pieces so that the pyramid shape of the midsole is visible to the naked eye in a lateral cross section of the sole. In *Converse,* the question before the court was whether HHI had impermissibly broadened its claims during reexamination. 183 F.3d at 1370, 51 USPQ2d at 1519. In answering that question, we relied on the figures shown below:

Fig. A     Fig. B

We noted that according to Converse, claim 1, as amended during reexamination, had been impermissibly broadened because original claim 1 only covered the Fig. B configuration, while the amended claim covered both the Fig. A configuration and the Fig. B configuration. *Id.* at 1373, 51 USPQ2d at 1520. In rejecting that argument, we noted that HHI amended claim 1 during reexamination to recite that the "heel portion means is 'pyramid shaped in lateral cross section with a lower rim having opposite sides which flare outwardly.'" *Id.* at 1374, 51 USPQ2d at 1522. We concluded that, by reason of this additional limitation, the amended claim covers only the Fig. B configuration. *Id.* We observed that the amended claim does not cover Fig. A because not only is the midsole 32 of Fig. A not "pyramid shaped" as the amended claim requires, but the lower rim does not "flare outwardly." *Id.* at 1375, 51 USPQ2d at 1522.

*Converse*, at most, requires us to construe claim 1 so that the "heel portion means" of the midsole is pyramid shaped in a lateral cross section, with a lower rim having opposite sides which flare outwardly. Nothing in *Converse* requires us to limit claim 1 to a sole in which the pyramid

shape is visible to the naked eye in a lateral cross section or to a sole that has a two-piece construction, i.e., a pyramid-shaped midsole and a separate support band. To the contrary, in *Converse*, we noted that the specification states that "the support band can be formed 'integral with the upper rim of the midsole' as shown in Fig. 6, or can be 'a separate piece which is secured as by fusion to the sole during manufacture.'" *Id.* at 1371, 51 USPQ2d at 1519. Therefore, our decision in *Converse* would tend to support the district court's claim construction.

The claim language, the specification, and the prosecution history also support the district court's claim construction. As we have stated, "the claims define the scope of the right to exclude; the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248, 48 USPQ2d 1117, 1120 (Fed.Cir.1998). Put another way, "the language of the claim frames and ultimately resolves all issues of claim interpretation." *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023, 43 USPQ2d 1545, 1548 (Fed.Cir.1997). In this case, nothing in the language of the

claims requires us to limit the claims to only a two-piece construction, i.e., a pyramid-shaped midsole and a separate support band. In addition, nothing in the language of the claims requires that the pyramid shape of the midsole be visible to the naked eye in a lateral cross section of the sole. To the contrary, the claim language supports both a one-piece and a two-piece construction. For example, claim 3 states: "An athletic shoe as in claim 2 in which the support band is integral with the midsole." Since claim 3 depends from claim 1, claim 1 is conceivably broader and could cover both a one-piece and a two-piece construction.

The specification also supports the district court's construction. Nothing in the specification limits the claimed invention to either a one piece or a two-piece construction. The specification supports both constructions. The specification states that the support band can be formed "integral with the upper rim of the midsole," as shown in Fig. 6, or can be "a separate piece which is secured as by fusion to the sole during manufacture." '895 patent, col. 3, II. 14–25. At the same time, nothing in the specification requires us to limit the claimed invention to a sole in which the pyramid shape is visible to the naked eye in a lateral cross section of the sole. In fact, the specification states: "[t]he lateral sides of the pyramid are not shown in the cross section of Fig. 6 because in the preferred embodiment they merge with the support band." '895 patent, col. 3, II. 10–11.

The prosecution history also supports our conclusion. Nothing in the prosecution history limits the patent claims to a two-piece construction, or requires that the pyramid shape of the midsole be visible to the naked eye.

Finally, we do not agree with Propet's claim construction because its construction would exclude the preferred embodiment, i.e., the one-piece construction, from the scope of the claims. A claim construction that excludes from its scope a preferred embodiment "is rarely, if ever, correct...." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed.Cir.1996).

In short, we agree with the district court's claim construction that "the support band and the midsole may be unitary or in two separate parts" and that "[w]hile the patent clearly requires a pyramid-shaped midsole, this shape need not be visible, if the pieces are merged." *See Claim Construction Order* at 5.

Based on its claim construction, the district court gave the jury the following claim construction instruction: "I have previously determined that the '895 patent is subject to two permissible constructions: the support band and the mid-sole may be either two separate pieces, or merged into one piece." We note that this instruction was incomplete because although the court construed the claims as requiring "a pyramid-shaped midsole, [which] ... need not be visible, if the pieces are merged," the court did not include this requirement in its instruction. *See Claim Construction Order* at 4–5. Propet, however, did not object to the court's incomplete instruction. *See* Fed.R.Civ.P. 51 (stating that a party must object to an error in a jury instruction before the jury retires in order to preserve the claim of error on appeal); *see also City of Springfield v. Kibbe,* 480 U.S. 257, 258–60, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). Moreover, in the district court, Propet's sole argument in support of its JMOL motion was that the district court erred in construing claim 1 as not requiring that the support band and the midsole be two separate pieces. In addition, in the district court, Propet never argued that given the district court's claim

construction, the jury's verdict of infringement was not supported by substantial evidence. Propet also does not make any of these arguments on appeal. It merely advances the claim construction argument that we have rejected. Under these circumstances, we affirm the district court's denial of Propet's motion for JMOL.[4]

Propet argues that if we find that claim 1 covers a one-piece shoe sole, as we have, then the claims of the '895 patent are invalid in view of certain prior art. It relies on the following prior art references in support of its argument: U.S. Patent No. 3,952,358 to Fuknoka, U.S. Patent No. 4,150,455 to Fuknoka, and South African Design Registration No. 78/1124 to Halberstadt. We disagree. Propet has not shown by clear and convincing evidence that any of these references anticipates or renders obvious the claims of the '895 patent. See WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1355, 51 USPQ2d 1385, 1396–97 (Fed.Cir.1999) (stating that because an issued patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence).

### IV.

We now turn to HHI's cross-appeal against Propet. This appeal raises five issues. We address each of them in turn.

#### A. *Calculation of damages*

At trial, HHI objected to the jury instruction relating to damages and requested that the district court include an instruction that all doubts resulting from Propet's failure to keep complete and proper records should be resolved in favor of HHI. In response, the court stated: "the jury charges as a whole treat that. There are several areas where some of that is mentioned, and I feel that it is stated in the whole, and the jury charges as a whole takes care of that situation." HHI argues that due to the court's failure to give the requested instruction, the jury was not able to award damages for 30,000 pairs of shoes shown to have been imported, but which Propet could not identify, so as to permit HHI to determine if they were infringing.

We review jury instructions for prejudicial legal error. See *Jamesbury Corp. v. Litton Indus. Prods.*, 756 F.2d 1556, 1558, 225 USPQ 253, 255 (Fed.Cir.1985), *overruled on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 22 USPQ2d 1321 (Fed.Cir.1992) (*en banc*). To prevail, the party challenging the jury instruction "must demonstrate both that the jury instructions actually given were fatally flawed and that the requested instruction was proper and could have corrected the flaw." *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 862, 20 USPQ2d 1252, 1261 (Fed. Cir.1991).

■ In this case, assuming *arguendo* that HHI has established that the instruction it requested was proper, it still has not shown how the jury instructions actually given were fatally flawed. Specifically, HHI has not shown how its requested instruction was not substantially covered

---

4. We also reject Propet's argument that its shoes cannot infringe the '895 patent if the shoe shown in Fig. A in *Converse* does not infringe the patent. In *Converse,* we could tell from looking at Fig. A that not only was the midsole 32 of the shoe shown in Fig. A not "pyramid shaped," as claim 1 of the '895 patent requires, but also that the lower rim did not "flare outwardly." 183 F.3d at 1375, 51 USPQ2d at 1522. Accordingly, we concluded that claim 1 did not cover the shoe shown in Fig. A. *Id.* In contrast, as we have noted, Propet has not even argued, much less shown, that substantial evidence does not support the jury's verdict of infringement in this case.

in the jury charge as a whole. Moreover, HHI cannot be awarded damages for shoes that it has not shown infringe its patent. We hold that the district court did not err by not giving the requested jury instruction.

### B. *Enhanced damages*

■ HHI also appeals the district court's award of $150,000 in enhanced damages. Under 35 U.S.C. § 284, damages may be enhanced up to three times the compensatory award. We review an award of enhanced damages under an abuse of discretion standard. *See Nat'l Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1193, 37 USPQ2d 1685, 1690 (Fed.Cir.1996). Under that standard, we affirm the district court's decision unless it is "clearly unreasonable, arbitrary or fanciful, or based on an erroneous conclusion of law or fact." *Yamanouchi Pharm. Co., Ltd. v. Danbury Pharmacal, Inc.,* 231 F.3d 1339, 1346, 56 USPQ2d 1641, 1646 (Fed. Cir.2000). To assist district courts in making reasoned decisions about enhanced damages, in *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826–27, 23 USPQ2d 1426, 1435–36 (Fed.Cir.1992), we set forth nine factors that are to be considered.

HHI argues that the district court abused its discretion by only awarding $150,000 in enhanced damages. It argues that the district court did not provide adequate reasons for applying a multiplier of 1.21 rather than a multiplier of 3.

We disagree with HHI and affirm the district court's award of $150,000 in enhanced damages. The court considered the *Read* factors and goals behind the award of enhanced damages before awarding HHI $150,000 in enhanced damages:

In light of these goals, and after careful consideration of each of the *Read* factors, the Court finds that enhanced damages are appropriate in this case, but not to the extent of treble the award. Balancing the aggravating and mitigating circumstances and taking into consideration the Defendant's size and financial condition, the duration of the Defendant's misconduct, and the motivation for harm, the Court concludes that an award of $150,000.00 is appropriate for enhanced damages.

*Order Addressing Motions* at 7. Under these circumstances, we hold that the district court did not abuse its discretion by not awarding HHI more than $150,000 in enhanced damages.

### C. *Attorney fees*

HHI also appeals the reasonableness of the attorney fees award. Under 35 U.S.C. § 285, a district court may award reasonable attorney fees to the prevailing party in exceptional cases. "The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is ... a factual determination reviewed for clear error." *Cybor,* 138 F.3d at 1460, 46 USPQ2d at 1178 (citation omitted). The subsequent determination of whether attorney fees are appropriate is reviewed for an abuse of discretion. *Id.*

HHI notes that because the district court conducted no inquiry into the actual hours or a reasonable hourly rate, it must have exercised its discretion to reject the lodestar method[5] and must have awarded attorney fees as a percentage of the award. It then argues that $120,000 in attorney fees amounts to approximately twelve percent of the value of the judgment and that this amount does not reasonably compen-

---

5. Under the lodestar method, the amount of attorney fees is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

sate HHI for the attorney fees it incurred. Accordingly, it concludes that the court abused its discretion in awarding it only $120,000 in attorney fees and requests that we increase the award to $500,000. Propet responds that the district court did not abuse its discretion in awarding only $120,000 in attorney fees.

█ Based on the record before us, we cannot determine whether the attorney fees award in this case was reasonable. The district court did not provide any analysis with respect to the amount of the award. It simply stated: "For these reasons, the Court finds this case 'exceptional' and GRANTS Plaintiff's motion for attorney fees in the amount of $120,000.00." *Order Addressing Motions* at 9. Under these circumstances, we hold that the district court erred by not explaining how it arrived at the $120,000 figure. *See Hughes v. Novi Am., Inc.,* 724 F.2d 122, 124, 220 USPQ 707, 709 (Fed.Cir.1984) (stating that "[w]hile an award of attorney fees is to be reviewed under the standard of whether such award constitutes an abuse of discretion, an award must be set aside if it is unsupported by adequate findings of the basis for the award, thereby precluding meaningful review") (citation omitted); *see also Lam, Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1068, 219 USPQ 670, 678 (Fed.Cir.1983) (stating that "[i]n determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia,* the billing rate charged and the number of hours expended") (emphasis in original) (citation omitted). As we have noted, there "must be some findings, certainly more than an 'equitable instinct,' supporting the fee award in order to provide a base for appellate review." *Water Techs.*

*Corp. v. Calco, Ltd.,* 850 F.2d 660, 674, 7 USPQ2d 1097, 1108 (Fed.Cir.1988) (citation omitted). Accordingly, we vacate the attorney fees award, and remand the matter to the district court so that it can award attorney fees upon appropriate findings.[6]

### D. *Prejudgment interest*

HHI also appeals the district court's award of prejudgment interest at the rate of 4.75 percent. We review a district court's award of prejudgment interest for an abuse of discretion. *See Bio–Rad Labs., Inc. v. Nicolet Instrument Corp.,* 807 F.2d 964, 969, 1 USPQ2d 1191, 1194 (Fed.Cir.1986) (citations omitted).

█ HHI argues that the district court abused its discretion by using the prime rate of 4.75 percent, which was in effect on January 18, 2002, the date of the *Order Addressing Motions,* rather than using an interest rate in effect on October 11, 1995, the date when infringement began. HHI contends that since the interest rate in effect on January 18, 2002 bears no relationship to compensating HHI for its loss and does not compensate HHI for that loss, the district court clearly erred in using the prime rate in effect on that date. It further argues that the record shows that the actual interest rate Propet was paying on October 11, 1995 was 10.50 percent (prime rate plus 1.75 percent). HHI notes that as this most closely represents what it would have cost Propet to pay HHI at the time it should have paid HHI, it was an abuse of discretion to use another rate, which is less than half that. For its part, Propet argues that the district court's post-trial decision concerning prejudgment interest was a well-reasoned decision and would be unreasonable.

6. Our decision should not be interpreted to mean that an attorney fees award of $120,000

that the district court did not abuse its discretion in setting the interest rate at 4.75 percent.

We agree with HHI and hold that the district court erred in awarding HHI prejudgment interest at the prime rate in effect on January 18, 2002. The purpose of prejudgment interest is "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). Although the rate of prejudgment interest is a matter left largely to the discretion of the district court, the court must be guided by the purpose of prejudgment interest in exercising that discretion. *Bio–Rad Labs., Inc.*, 807 F.2d at 969, 1 USPQ2d 1194–95 (citations omitted). Here, we do not believe that the district court's use of the prime rate in effect at the time of the prejudgment interest award ensures that HHI is placed in as good a position as it would have been had Propet entered into a reasonable royalty agreement. The evidence in the record shows that Propet was paying interest between the rate of prime and prime plus 1.75 percent during the time of infringement. In choosing the 4.75 percent interest rate, the district court gave no reason why it used the prime rate in effect on January 18, 2002 instead of the rate suggested by the evidence in the record, the prime rate in effect during the time of infringement, or the prime rate in effect on the date infringement began. The district court's use of the prime rate in effect on January 18, 2002 had the effect of limiting the amount of prejudgment interest that HHI was entitled to. Accordingly, we vacate the district court's award of prejudgment interest at the rate of 4.75 percent and remand the matter to the district court so it can redetermine the rate of prejudgment interest.

## E. *Expert fees*

■ Before trial, Propet deposed HHI's expert, Ian Whatley. When Mr. Whatley submitted an invoice for $2,460 to Propet for time spent preparing and attending the deposition, Propet refused to pay the invoice, claiming that the district court stated that Mr. Whatley's expert fees would be taxed as a cost. Subsequently, HHI filed a motion in the district court requesting payment of expert discovery fees from Propet. The district court denied the motion, ordering that expert discovery fees be taxed as a cost and be paid by Propet along with other taxable costs. *Fees Order.*

On appeal, HHI argues that the district court erred in ruling that HHI's expert fees, incurred to attend a deposition noticed by Propet, are taxable as trial costs rather than owed directly to the expert under Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure. In addition, HHI argues that Propet's counsel should be held jointly and severally liable for payment of the fees. Propet argues that Rule 26 gives the district court the discretion to make expert fees taxable as costs or not award them at all.

Rule 26(b)(4)(C) states:

Unless manifest injustice would result, (i) the court *shall* require that the party seeking discovery *pay the expert* a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

Fed.R.Civ.P. 26(b)(4)(C) (emphases added). We apply the law of the regional circuit when the precise issue to be addressed involves an interpretation of the Federal Rules of Civil Procedure. *Wexell v. Komar Indus., Inc.,* 18 F.3d 916, 919, 29 USPQ2d 2017, 2019 (Fed.Cir.1994). Under Fifth Circuit law, questions of law, such as a district court's interpretation of the Federal Rules of Civil Procedure, are reviewed *de novo. Odom v. Frank,* 3 F.3d 839, 843 (5th Cir.1993). As far as we can tell, the Fifth Circuit has not ruled on the issue before us, i.e., whether the expert fees due under Rule 26(b)(4)(C) can be taxed as costs. However, the Fifth Circuit has noted that Rule 26(b)(4)(C) provides an independent basis for recovery of expert fees as part of discovery. *See Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 332–33 (5th Cir.1995). Moreover, the plain language of the rule provides that the "court *shall* require the party seeking discovery *pay the expert* a reasonable fee." Fed.R.Civ.P. 26(b)(4)(C) (emphases added). In view of *Kellstrom* and the plain language of the rule, we believe that the district court should have ordered Propet to pay Mr. Whatley directly rather than taxing his fees as costs. Accordingly, we reverse the district court's denial of HHI's motion and remand the matter to the district court for entry of an appropriate order directing Propet to pay Mr. Whatley $2,460. However, we decline to hold that Propet's counsel is jointly and severally liable for payment of the expert fees.

## V.

We now turn to HHI's appeal against Costco. The following facts are not in dispute. Costco operates an international chain of membership warehouses that offer merchandise for sale to businesses and individuals at reduced wholesale and retail prices. It is a Washington State corporation with its principal place of business in that jurisdiction. It has never operated any warehouse locations in Louisiana and has no bank accounts, property, offices, agents, or employees in that state. It also has no inventory or sales records in Louisiana. Finally, Costco is not registered to do business in Louisiana and does not have an agent for service of process in Louisiana. From November of 1998 to the present, Costco has operated a website that allows visitors to make online purchases, regardless of whether or not the purchaser had a Costco membership. Between November of 1998 and April of 2000, Costco shipped a total of $32,252.32 worth of merchandise into Louisiana pursuant to orders made through the website. This revenue represents less than .00008 percent of Costco's total sales during that time period. None of the e-commerce sales into Louisiana were sales of the alleged infringing footwear. *Costco Order* at 2.

After HHI sued Costco, Costco moved to dismiss for lack of personal jurisdiction and venue. In considering Costco's motion, the district court determined that Costco's e-commerce activities in Louisiana were incidental or fortuitous contacts that were both unrelated to the alleged infringement and insufficient in nature and number to constitute purposeful availment. *Id.* at 5. It also determined that exercise of personal jurisdiction over Costco would be inconsistent with traditional fairness considerations. *Id.* Finally, the court noted that in patent infringement cases, personal jurisdiction and venue involve the same analysis and need not be considered separately. *Id.* at 5–6. Accordingly, the Court dismissed HHI's suit against Costco for lack of personal jurisdiction and venue. *Id.* at 6. In addition, the court denied HHI's request for discovery on the issue of personal jurisdiction, stating that additional discovery would not be fruitful. *Id.*

HHI appeals the district court's dismissal of it's suit against Costco for lack of personal jurisdiction, as well as the court's denial of its request for discovery. We consider each of these issues in turn.

## A.  *Personal jurisdiction*

■ Whether a court has personal jurisdiction over a defendant is a question of law which we review *de novo*. *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1269, 46 USPQ2d 1616, 1619 (Fed. Cir.1998). We apply the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, to determine whether a district court properly declined personal jurisdiction in a patent infringement case. *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354, 61 USPQ2d 1696, 1698–99 (Fed.Cir.2002).

On appeal, HHI notes that Costco has an interactive website through which, during the relevant period, it generated over $32,000 in sales through possibly hundreds of transactions. It then argues that under the evolving law of general jurisdiction based on Internet activities, Costco's activities are continuous and systematic. It also argues that the exercise of personal jurisdiction over a $27 billion company is reasonable. Costco responds that its e-commerce sales in Louisiana are incidental or fortuitous contacts that are both unrelated to the alleged infringement and insufficient in nature and number to qualify as substantial, continuous, and systematic contacts justifying the exercise of general personal jurisdiction. Costco asserts that to subject it to suit in Louisiana solely on the basis of a minuscule number of e-commerce sales unrelated to the cause of HHI's alleged injury would offend traditional notions of fair play and substantial justice. We agree with Costco and hold that the district court did not err in dis-

missing HHI's suit against Costco for lack of personal jurisdiction.

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process. *Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458, 43 USPQ2d 1786, 1788 (Fed.Cir.1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Because Louisiana's long-arm statute extends to the limits of due process, *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1192 (La.1987), the two inquiries collapse into a single inquiry: whether exercise of personal jurisdiction comports with due process, *Dainippon*, 142 F.3d at 1270, 46 USPQ2d at 1619–20.

In *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court held that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, [1] he have certain *minimum contacts* with it such that [2] the maintenance of the suit does not offend *'traditional notions of fair play and substantial justice.'*" *Id.* at 316 (emphases added) (citations omitted). In short, we are required to determine whether a defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

### 1.  Minimum contacts

Under the "minimum contacts" test, a defendant may be subject to either specific jurisdiction or general jurisdiction. Specific jurisdiction "arises out of" or "relates to" the cause of action even if those con-

tacts are "isolated and sporadic." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, these contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *International Shoe,* 326 U.S. at 318.

Since Costco did not sell the alleged infringing shoes to customers in Louisiana, we need to determine whether Costco's contacts with Louisiana were such that the district court could have exercised general jurisdiction over it. Even if we were to assume that Costco's contacts in Louisiana were continuous—because from December 1998 through April 2000 Costco had some sales in Louisiana every month with the exception of February 1999 through its website—its contacts in Louisiana were not so substantial and of such a nature as to justify the exercise of general jurisdiction over it. As we have noted, Costco is a Washington State corporation with its principal place of business in that jurisdiction. It has never operated any warehouse locations in Louisiana and has no bank accounts, property, offices, agents, or employees in that state. It also has no inventory or sales records in Louisiana. Finally, Costco is not registered to do business in Louisiana and does not have an agent for service of process in Louisiana. Costco's only contact with Louisiana is its website. Through this website, from December of 1998 through April of 2000, Costco's sales in Louisiana totaled $32,252.32, which represents less than .00008 percent of the total amount of sales

Costco had during that period. Under these circumstances, we hold that Costco did not have such minimum contacts with Louisiana to justify exercise of general jurisdiction over it in Louisiana. *See, e.g., Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. at 414 (finding that a court did not have general personal jurisdiction over foreign corporation that sent officers to forum for a negotiating session, accepted checks drawn from a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242–43 (9th Cir. 1984) (finding that foreign corporation's sales and marketing efforts in forum state, including solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings, were insufficient contacts to assert general jurisdiction); *Stairmaster Sports/Med. Prods., Inc. v. Pacific Fitness Corp.,* 916 F.Supp. 1049 (W.D.Wash.1995), *aff'd,* 78 F.3d 602 (Fed.Cir.1996) (finding that the court could not exercise general personal jurisdiction over a defendant when only contacts with the forum were isolated visits by defendant's agents and products shipped into forum which were unrelated to suit and constituted only three percent of total sales).

### 2. Traditional notions of fair play and substantial justice

Even if we were to conclude that Costco had minimum contacts with Louisiana, exercising personal jurisdiction over it would not comport with traditional notions of fair play and substantial justice. The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice"—that is, whether it is reasonable under the circum-

stances of the particular case. *See International Shoe*, 326 U.S. at 316. The Supreme Court has stated that a court must evaluate the following factors as part of this "reasonableness" analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal Ind. Co. v. Superior Ct. of Cal., Solano City*, 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

To subject a nonresident corporate defendant, such as Costco, to suit in Louisiana solely on the basis of a minuscule number of e-commerce sales that are unrelated to the cause of the plaintiff's alleged injury would, we think, render established jurisdictional boundaries meaningless. Furthermore, other organizations that operate websites accessible to online purchasers would be deprived of the ability to predict with any certainty where they would be subject to suit. Accordingly, we agree with the district court that the exercise of personal jurisdiction over Costco in this case would be inconsistent with traditional fairness considerations. We thus affirm the district court's dismissal of HHI's suit against Costco for lack of personal jurisdiction.

B.  *Discovery*

On appeal, HHI argues that the district court erred by denying its request for discovery on Costco's jurisdictional contacts with Louisiana. Specifically, HHI contends that if we disagree with its argument that the facts which are known are sufficient to support the exercise of personal jurisdiction, as we have, then it be given an opportunity to discover additional facts that will show that Costco's contacts with Louisiana are continuous and systematic and are not random, fortuitous, or attenuated. For its part, Costco contends that the district court did not err by refusing to permit discovery.

We review matters not within our exclusive jurisdiction, such as matters relating to discovery, under the applicable law of the regional circuit in which the district court sits. *See Serrano v. Telular Corp.*, 111 F.3d 1578, 1584, 42 USPQ2d 1538, 1543 (Fed.Cir.1997). Under Fifth Circuit law, a district court has broad discretion in all discovery matters, and ordinarily the exercise of that discretion will not be disturbed unless there are unusual circumstances showing a clear abuse. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir.2000) (citation omitted).

■ We agree with Costco and hold that the district court did not abuse its discretion by denying HHI's request for discovery. When the lack of personal jurisdictional is clear, like in this case, further discovery serves no purpose and should be denied. *See Kelly*, 213 F.3d at 855 (noting that discovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact, and that when the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted) (citations omitted).

CONCLUSION

Because we conclude that the district court correctly construed the claims of the '895 patent, we affirm the district court's denial of Propet's motion for JMOL. We also affirm the district court's refusal to give the instruction requested by HHI with respect to damages and the district court's award of enhanced damages in the amount of $150,000. However,

because the district court did not explain how it arrived at the amount of the attorney fees it awarded, we vacate the award and remand. We also vacate the district court's award of prejudgment interest at the rate of 4.75 percent and remand. We reverse the district court's denial of HHI's motion for payment of expert fees and remand for entry of an appropriate order by the district court directing Propet to pay HHI's expert, Mr. Whatley. Finally, we affirm the district court's dismissal of HHI's suit against Costco for lack of personal jurisdiction, as well as the court's denial of HHI's request for discovery. Accordingly, we affirm-in-part, reverse-in-part, vacate-in-part, and remand.

No costs.