## OAKLEY, INC.,

v.

JOFA AB; The Hockey Company, a Canadian Corporation; The Hockey Company Holdings, Inc., a Canadian Corporation; The Hockey Company, a Delaware Corporation; Maska U.S. Inc., a Vermont Corporation; Sport Maska, Inc., a Canadian Corporation; and Hockey West, Inc., a California Corporation.

No. SACV 03–1185 DOC(ANx).

United States District Court, C.D. California.

Oct. 6, 2003.

Joseph F. Jennings, Gerard Von Hoffmann, Paul N. Conover, Knobbe, Martens, Olson & Bear, Irvine, CA, Gregory L. Weeks, Janet Robertson Kaufman, Grego-

ry K. Nelson, Weeks, Kaufman & Johnson, Solana Beach, CA, for plaintiff.

John M. Benassi, Kurt Matthew Kjelland, Colbern C. Stuart, III, Paul, Hastings, Janofsky & Walker, San Diego, CA, Matthew C. Lapple, Paul, Hastings, Janofsky & Walker, Costa Mesa, CA, for defendants.

## PROCEEDING (IN CHAMBERS): DENYING DEFENDANT'S MOTION TO DISMISS

CARTER, District Judge.

Before the Court is Defendant The Hockey Company, a Delaware Corporation's (The Hockey Company) motion to dismiss Plaintiff's first amended complaint. The Court finds that the matter is appropriate for decision without oral argument. Fed.R.Civ.P. 78; Local Rule 7–15. Accordingly, the hearing set for October 6, 2003 is removed from the Court's calendar. After reviewing the moving, opposing and replying papers, and for the reasons set forth below, the Court DENIES the motion.[1]

## I. BACKGROUND

Plaintiff Oakley, Inc. is a designer, manufacturer, and seller of high performance eyewear and other products. Oakley is the current owner of U.S. Patent Nos. 6,010,217, and 5,815,848. Oakley is incorporated in Washington and has its principal place of business in Foothill Ranch, California. On July 29, 2003, Oakley filed this patent infringement action against three defendants: JOFA AB, The Hockey Company, and The Hockey Company, Inc. On August 13, 2003, Oakley filed a first amended complaint adding Defendants The Hockey Company Holdings, Inc., Maska U.S., Inc., Sport Maska, Inc., and Hockey West, Inc.

Defendant The Hockey Company is a holding company which owns a number of independent subsidiary corporations including Maska U.S.A. Inc., Sport Maska, Inc., and Hockey West, Inc. The Hockey Company moves the Court to dismiss Plaintiff's complaint for lack of personal jurisdiction. Oakley opposes the motion.

## II. LEGAL STANDARD

■ Since the personal jurisdictional inquiry is intimately involved with the substance of patent laws, the law of the Federal Circuit applies. *Electronics for Imaging, Inc., v. Coyle,* 340 F.3d 1344, 1348 (Fed.Cir.2003). Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must dismiss a case for "lack of jurisdiction over the person." When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of making "a prima facie showing of jurisdictional facts." *Id.* at 1349; *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984); *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285–86 (9th Cir.1977). The required prima facie showing must be of either general or specific jurisdiction.

■ Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due process. *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed.Cir.2001). The California long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal.Civ.Proc.Code § 410.10. California courts have held that the limits of the state

---

1. As a preliminary matter, Defendant objects to evidence submitted by Plaintiff in support of its opposition to Defendant's motion to dismiss. To the extent the Court relies on the evidence in this Order, Defendant's objections are OVERRULED.

long-arm statute are co-extensive with the limits of the federal constitution. *Electronics for Imaging*, 340 F.3d at 1349–1350; *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir.1993); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986).

Under the due process clause, courts may exercise either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General personal jurisdiction is established where a defendant's activities in the forum state are "continuous and systematic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Specific personal jurisdiction is established if the defendant has "minimum contacts" with the forum state that, although not "continuous and systematic," are sufficiently related to the cause of action "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Data Disc*, 557 F.2d at 1287 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). In general, there must be "some act" by which defendants "purposefully avail" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Electronics for Imaging*, 340 F.3d at 1350 (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174). Due process therefore requires that the defendant have fair warning that a particular activity may subject it to jurisdiction in the forum state. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174.

The Hockey Company is the moving party for this motion to dismiss. Therefore, Oakley bears the burden of proof on the necessary jurisdictional facts. *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir.1984). When a defendant's motion to dismiss is made as its initial response, the plaintiff only needs to make a prima facie showing that personal jurisdiction exists. *Data Disc*, 557 F.2d at 1285. In considering a plaintiff's prima facie showing, the Court must accept the plaintiff's uncontroverted allegations as true and resolve any factual conflicts in the affidavits in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed.Cir.2002); *Bancroft & Masters, Inc., v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000). A prima facie showing must be based on affirmative proof beyond the pleadings, such as affidavits, testimony or other competent evidence of specific facts. *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.6 (3rd ed.2002).

### III. DISCUSSION

The Hockey Company filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. In support of its motion, The Hockey Company submitted several declarations. Plaintiff Oakley then submitted several declarations in opposition to the motion. A first declaration is from Gregory K. Weeks (the Weeks Declaration), counsel of record for Plaintiff Oakley. A second declaration is from William Huard (the Huard Declaration), Brand Manager for hockey and football for Oakley. A third declaration is from Hanriet Boghoskhan (the Boghoskhan Declaration), Executive Assistant to Scott Oliver, General Manager of Oakley, Canada.

In order to establish specific jurisdiction, Oakley sets forth two main arguments. Oakley's first argument is that The Hockey Company is not a passive holding company as it claims to be. Rath-

er, The Hockey Company is a developer and manufacturer of products, a seller of products, was responsible for the development of the infringing visor, and actively induces the manufacture and sale of the infringing visor by its subsidiaries. To support its contentions, Plaintiff relies on a public presentation entitled "To Develop and Maintain an Internal Program of Intellectual Patent Rights Management: That's 'The Hockey Company' Experience" made by The Hockey Company's Director of Legal Affairs, Mrs. Josephine Battista in June 2003. (Weeks Decl., Ex. G.) In this presentation, Mrs. Battista noted several of The Hockey Company's [2] activities, including obtaining intellectual property protection, planning upcoming products, keeping abreast of competitor's activities and so on. *Id.* Also, Oakley provides evidence in the form of receipts, a series of screen shots from Yahoo.com, invoices from hockey clubs that the accused "Image Visor" is marketed, distributed, offered for sale, and sold in this judicial district. (Weeks Decl., Exs. A, B, C, D.) Everyone in the hockey retail industry considers The Hockey Company and its subsidiaries as one entity, with The Hockey Company being the ultimate company that directs the actions of all the others. (Huard Decl., ¶ 5.) Furthermore, most of The Hockey Company's officers are also officers of its subsidiary SMI, suggesting a level of control by The Hockey Company greater than that would be exercised by a passive holding company. (Boghoskhan Decl., ¶¶ 8,10.)

Oakley's next argument is based on the theory of induced or contributory infringement. Specifically, Oakley relies on *Bev-erly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558 (Fed.Cir.1994) for the principle that a foreign entity's actions in inducing or contributing to infringement from outside the U.S. give rise to personal jurisdiction in any U.S. forum where the infringing products are sold through established distribution channels. Oakley argues that The Hockey Company designed and developed the infringing product, took responsibility for investigating the legal consequences of those actions, induced its wholly-owned subsidiaries to manufacture, sell, and distribute the infringing product, and continues to induce sales of the infringing product in California on its website by advertising the infringing products and identifying retail stores where the products may be purchased by consumers. As such, argues Oakley, The Hockey Company is liable for induced or contributory infringement and this contributory infringement has caused the allegedly infringing products to be injected into the stream of commerce for sale in this judicial district.

As evidence, Oakley presents an exhibit of the website "www.thehockeycompany.com." (Weeks Decl., Ex. J.) The website claims that "[t]hrough its subsidiaries, The Hockey Company, headquartered in Montreal, Canada is the world's largest marketer and manufacturer of hockey equipment and apparel..." *Id.*

The Hockey Company disagrees. The crux of The Hockey Company's argument is that it is merely a holding company, existing primarily to own the assets of a number of foreign and U.S. corporations.

---

**2.** The Hockey Company attacks Oakley's evidence that The Hockey Company is more than a holding company by offering as evidence the declarations of Mrs. Battista and Ms. Giovanna Di Ielsi, the director of information technology for SMI. Mrs. Battista states that when she said The Hockey Company in her presentation, she really meant SMI. Ms. Di Ielsi states that the The Hockey Company website is not really the The Hockey Company website. She states that The Hockey Company is a trademark owned by SMI and used by The Hockey Company by SMI's permission. In as much as these attacks create factual disputes, the Court must resolve them at this stage in Plaintiff's favor.

As evidence, The Hockey Company presents Mrs. Battista's Declaration which provides a chart of the company organization. As a holding company, The Hockey Company contends that it does not manufacture, produce, sell or market any products or business in California, including specifically the hockey visors identified in Plaintiff's complaint. The Hockey Company further argues that since it has nothing to do with the accused product, it did not place the hockey visors into the stream of commerce, and hence the "stream of commerce" theory may not be applied to assert jurisdiction.

■ The Hockey Company also argues that the activities and contacts of its subsidiaries cannot be imputed to it for the purposes of personal jurisdiction. The Court agrees with The Hockey Company. The Hockey Company is a separate legal entity from its subsidiaries and as such cannot be held to have contacts with California just because its subsidiaries maintain contacts with California.

■ The Hockey Company also argues that even if Oakley could assert a claim against it for inducing infringement by its subsidiaries and even if its subsidiaries are subject to personal jurisdiction in California, it does not follow that it is subject to personal jurisdiction in California because due process still mandates certain minimum contacts on its behalf before it can be haled into a court in California.

The Court is not persuaded. The Court finds that as to this argument, the following comment of the U.S. Supreme Court is particularly relevant:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the [defendants] to serve, directly or indirectly, the market for its product ..., it is not unreasonable to subject it to suit.

*World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Assuming that Oakley is correct in contending that The Hockey Company's efforts serve, directly or indirectly, the market for its "Image" visor product in California (and there is prima facie evidence to support this contention), it is not unreasonable to subject The Hockey Company to suit. The situation is this case is analogous to the situation in *Beverly Hills Fan Company,* in which the holder of a design patent for ceiling fans brought patent infringement action against manufacturer and importer of allegedly infringing fans. The manufacturer, Ultec, was incorporated in China and manufactured the accused fan in Taiwan. The district court found that the "only purposeful contact the court considered relevant was the one-time shipment of unrelated goods...." and concluded that "such contact was not sufficient to make litigation in Virginia foreseeable..." *Id.* at 1561. The Federal Circuit reversed, reasoning that "plaintiff has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: defendants, acting in consort [with the importer Royal], placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566.

Here, when viewed in the light of the allegations and the assertions in the declarations, Oakley has stated all of the necessary ingredients for an exercise of jurisdiction consonant with due process: The Hockey Company acted in consort with other Defendants to place the accused visor in the stream of commerce, The Hockey Company knew that the accused visor was being sold in California, and their conduct and connections with the forum

state were such that they should reasonably have anticipated being brought into court here. In fact, the fact situation is more compelling here than in *Beverly Hills Fan Co.* given the peculiar relationship between The Hockey Company and the other Defendants, which are its subsidiaries.

When a defendant's motion to dismiss is made as its initial response, the plaintiff only needs to make a prima facie showing that personal jurisdiction exists. In considering a plaintiff's prima facie showing, the Court must accept plaintiff's allegations as true. Construing all reasonable inferences that can be drawn from the papers in the plaintiff's favor, the Court finds that Oakley has met its burden of proof on the necessary jurisdictional facts. The Court finds that Oakley has made a prima facie showing based on affirmative proof beyond the pleadings, including the declarations of Weeks, Mitchell, and Boghoskhan.

 Notwithstanding the existence of purposeful minimum contacts, a due process determination requires one further step. Due process requires that the court consider whether it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances. In general, these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum. *Beverly Hills Fan Co.,* 21 F.3d at 1568.

The Court concludes that this is not one of those rare cases. California's interests in the dispute are significant. California has an interest in discouraging injuries that occur within the state. This interest extends to patent infringement actions such as the one here. The burden on The Hockey Company is not particularly significant. The Hockey Company is incorporated in Delaware and has its principal place of business in Canada. Thus, The Hockey Company will have to travel far to California to defend itself. However, it is recognized that " 'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.' " *Id.* at 1569 (citing *World–Wide Volkswagen,* 444 U.S. at 294, 100 S.Ct. at 565). Also, The Hockey Company shares with the other defendants in suit many of its witnesses and other sources of proof.[3] Since these witnesses will have to come to California anyway, is it not unreasonable to require them to present themselves to represent The Hockey Company. Accordingly, the Court concludes that the burden on The Hockey Company is not sufficiently compelling to outweigh Plaintiff's and California's interests.

Of course, this prima facie showing of jurisdiction, sufficient to survive a motion to dismiss made prior to commencement of discovery, does not preclude eventual need to establish existence of personal jurisdiction by preponderance of evidence at a later stage in the litigation.

## IV. DISPOSITION

Accordingly, for the reasons set forth above, the Court DENIES Defendant The Hockey Company's motion to dismiss for lack of personal jurisdiction.

The Clerk shall serve this minute order on all parties to the action.

---

3. For example, the officers for The Hockey Company are also officers for SMI.