**MCGILL TECHNOLOGY LIMITED, Plaintiff,**

v.

**GOURMET TECHNOLOGIES, INC.,** Allied **Brands International, Inc., and New Brunswick Saw Service, Inc.,** Defendants.

No. 03–40087.

United States District Court, E.D. Michigan, Southern Division.

Jan. 27, 2004.

Douglas L. Wathen, Gifford, Krass, Ellen S. Cogen, Gifford, Krass, Ernest I. Gifford, Gifford, Krass, Mark D. Schneider, Gifford, Krass, Birmingham, MI, for McGill Technology, Limited, Plaintiff.

David A. McClaughry, Harness, Dickey, George D. Moustakas, Harness, Dickey, Bloomfield Hills, MI, for Gourmet Technologies, Incorporated, Allied Brands International, Incorporated, New Brunswick Saw Service, Incorporated, Defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GADOLA, District Judge.

This is a patent infringement action involving a frozen confection dispensing ap-

paratus, i.e., a soft serve ice cream dispenser. *See* 35 U.S.C. § 271. Defendant Gourmet Technologies ("GT") and Defendant Allied Brands International ("ABI") have filed a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff filed a response, and Defendants GT and ABI filed a reply brief. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant Defendants GT and ABI's motion.

## I. BACKGROUND

Plaintiff, incorporated in the United Kingdom, is headquartered in Kent, England. Plaintiff owns United States Patent Numbers 5,620,115, 6,105,820, and 6,182,862. These patents pertain to ice cream dispenser technology and form the basis of this infringement action.

Defendant GT is a New York corporation located in Ronkonkoma, New York. Defendant GT markets, distributes, and sells equipment and supplies to the food service industry, and the majority of its business is conducted in Connecticut, New Jersey, and New York. Further, Defendant GT maintains two Internet sites: (1) www.gourmettechnologies.com ("the GT site") and (2) www.worldofgelato.com ("the Gelato site"). On one occasion, through the Gelato site, Defendant GT sold approximately $4,000.00 worth of pans for a frozen confection known as gelato to a customer in Michigan. Beyond this single sale, Defendant GT has not sold any goods or services in Michigan.[1] The revenue

from this sale constitutes less than 0.25 percent of Defendant GT's annual sales.

Defendant ABI is also a New York corporation with its corporate address in Ronkonkoma, New York. Defendant ABI, however, was incorporated for the purpose of reserving this particular corporate name for possible future use, and, as of August 2003, this idle corporation has not engaged in any business. Defendants GT and ABI share the same corporate address: 51 Trade Zone Drive, Ronkonkoma, New York.

Defendant New Brunswick Saw Service ("NBSS") is a New Jersey corporation with its offices in Edison, New Jersey. As part of its business, Defendant NBSS also sells food service equipment. For example, on December 19, 2002, Defendant NBSS generated a price quotation for an allegedly-infringing ice cream dispenser. The quotation was for an individual named Marianne Gifford at 5210 Kings Gate Way, Bloomfield Hills, Michigan. Attached to the quotation was a two-page brochure describing this particular dispenser. A label containing Defendant NBSS's contact information was attached to the front of the brochure. Additionally, the back of the brochure included the contact information for another entity by the name of "Allied Brands" at 51 Trade Zone Drive, Ronkonkoma, New York. The nature of the brochure indicates that Defendant NBSS was a distributor for this entity called Allied Brands and that Allied Brands was supplying this particular dispenser to Defendant NBSS.

---

1. This fact that Defendant GT has only had one sale in Michigan is taken from an affidavit provided by Defendant GT's president. *See* Mot. Ex. A at ¶ 17. In its response, Plaintiff theorizes that, given Defendant GT's annual sales (roughly estimated to be $5–$10 million by a third-party business information firm), Defendant GT must have more than $4,000.00 worth of sales in Michigan. *See* Resp. at 12 (citing Resp. Ex. L). Beyond this mere speculation, however, Plaintiff offers no proof showing that Defendant GT has transacted more than $4,000.00 of business in Michigan through this sale of gelato pans.

As a part of its business, Defendant GT was a distributor for a supplier called "Allied Brands LLC." Allied Brands LLC is now a defunct New York company. Allied Brands LLC is not a party to this action. When it was in business, Allied Brands LLC was located at 51 Trade Zone Drive, Ronkonkoma, New York, and Allied Brands LLC and Defendant GT employed the same fax number.

As early as August 2000, Plaintiff alerted Allied Brands LLC to the possibility of infringement liability from its business of supplying the aforementioned dispenser. Plaintiff was in similar contact with Defendant GT. In March 2002, Defendant GT informed Plaintiff that Allied Brands LLC was out of business, and, as a result, Defendant GT was no longer a distributor of the allegedly-infringing dispenser for Allied Brands LLC.

Nevertheless, Plaintiff claims that Defendant GT was marketing the allegedly-infringing dispenser as late as November 2002 on its GT site. A month later is when Defendant NBSS generated the aforementioned price quotation for Marianne Gifford at 5210 Kings Gate Way, Bloomfield Hills, Michigan. Property records for Oakland County, Michigan show that this address is a residence owned by Plaintiff's counsel, Ernest I. Gifford.

Plaintiff initiated this action on April 14, 2003. The initial complaint was against Defendants GT and ABI. Plaintiff filed an amended complaint on May 16, 2003, adding Defendant NBSS. The amended complaint contains one count: patent infringement. On August 29, 2003, Defendants GT and ABI filed the present motion to dismiss for lack of personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2). On September 5, 2003, Plaintiff requested an entry of default against Defendant NBSS, and the Clerk of the Court's entry of default against Defendant NBSS was issued on September 8, 2003. *See* Fed.R.Civ.P. 55(a).

## II. LEGAL STANDARD

To determine whether personal jurisdiction exists in a patent infringement action, the Court applies the law of the United States Court of Appeals for the Federal Circuit. *See Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1348 (Fed.Cir. 2003). For the Court to maintain personal jurisdiction over a non-consenting defendant outside the boundaries of the forum state, two requirements must be satisfied. *See Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.,* 148 F.3d 1355, 1358 (Fed.Cir.1998). One, the defendant must be subject to personal jurisdiction under the laws of the forum state, which in this case is the State of Michigan. *See Red Wing,* 148 F.3d at 1358; *Hi–Tex, Inc. v. TSG, Inc.,* 87 F.Supp.2d 738, 742 (E.D.Mich.2000). Two, the exercise of personal jurisdiction over the defendant must comport with the Due Process Clause. *Red Wing,* 148 F.3d at 1358; *Hi–Tex,* 87 F.Supp.2d at 742. "The Due Process Clause requires Plaintiff[ ] to show that Defendants have 'minimum contacts' with Michigan 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Viches v. MLT, Inc.,* 127 F.Supp.2d 828, 830–31 (E.D.Mich.2000) (Gadola, J.) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

Under Michigan law, as well as the Due Process Clause, the Court may exercise either (1) limited personal jurisdiction (also known as specific personal jurisdiction) or (2) general personal jurisdiction. *See Donnely Corp. v. Reitter & Schefenacker GmbH & Co. KG,* 189 F.Supp.2d 696, 702 (W.D.Mich.2002). Limited jurisdiction exists when the cause of action at issue arises out of or relates to

a defendant's contacts with the forum state, even if those contacts are isolated and sporadic. *See Red Wing,* 148 F.3d at 1359; *Hi–Tex,* 87 F.Supp.2d at 742; Mich. Comp. Laws § 600.715. General jurisdiction, by contrast, exists when a defendant has continuous and systematic contacts with the forum state justifying the Court's exercise of judicial authority with respect to any and all claims against the defendant; in other words, the defendant may be subject to jurisdiction even when the cause of action has no relation to the defendant's contacts with the forum state. *See Red Wing,* 148 F.3d at 1359; *Hi–Tex,* 87 F.Supp.2d at 742; Mich. Comp. Laws § 600.711(3).

■ Because the parties have not conducted discovery and because the Court will decide the motion on the basis of affidavits and other written materials, Plaintiff need only make a prima facie showing that Defendants GT and ABI are subject to personal jurisdiction in Michigan. *See Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1201 (Fed.Cir. 2003); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1347 (Fed.Cir.2002); *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1383 (Fed.Cir.1998). The Court's "task in evaluating whether [Plaintiff] has made a prima facie showing of personal jurisdiction over [Defendants] requires construing the pleadings and affidavits in the light most favorable to [Plaintiff]." *Deprenyl,* 297 F.3d at 1347 (citing *Graphic Controls,* 149 F.3d at 1383); *see also Silent Drive,* 326 F.3d at 1201.

## III. ANALYSIS

Plaintiff asserts that the Court has limited jurisdiction as well as general jurisdiction over Defendants GT and ABI. The Court first will address limited jurisdiction and then general jurisdiction.

### A. Limited Jurisdiction

Plaintiff claims that the Court has limited jurisdiction over Defendants GT and ABI as the result of Defendant NBSS's price quotation for Marianne Gifford, which was dated December 19, 2002. *See* Resp. Ex. G. Plaintiff argues that this single event triggers two provisions of Michigan's long arm statute: transacting of business in Michigan, Mich. Comp. Laws § 600.715(1), and doing or causing an act in Michigan resulting in an action for tort, Mich. Comp. Laws § 600.715(2). *See Donnely,* 189 F.Supp.2d at 703 (patent infringement is treated as a tort for § 600.715(2) purposes).

In support of this argument, Plaintiff contends that, through a series of agency and/or alter-ego relationships connecting Defendant NBSS to Defendants GT and ABI and involving the defunct Allied Brands LLC, Defendants GT and ABI should be held accountable for Defendant NBSS's act of offering a price quotation to Marianne Gifford. Even assuming *arquendo* that, as Plaintiff claims, Defendants GT and ABI are legally responsible for Defendant NBSS's act and that this act satisfies § 600.715(1) and/or § 600.715(2), the Court cannot exercise limited jurisdiction over Defendants GT and ABI in this situation because to do so would be inconsistent with due process.

■ The exercise of personal jurisdiction is inconsistent with due process when the maintenance of the action offends traditional notions of fair play and substantial justice. *See Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154. To this end, "there must be some act by which defendants purposefully avail themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Elecs. For Imaging,* 340 F.3d at 1350 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct.

2174, 85 L.Ed.2d 528 (1985) (internal quotation omitted)). Under this principle, "the courts have repeatedly held that [personal] jurisdiction may not be manufactured by the conduct of others" because "[u]nder such circumstances a defendant cannot be said to have purposefully availed itself of the forum." *Edberg v. Neogen Corp.*, 17 F.Supp.2d 104, 112 (D.Conn. 1998) (citing *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127 (4th Cir.1986); *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 425 (E.D.Va.1996)); *see also Red Wing*, 148 F.3d at 1359; *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 332–33 (D.S.C.1999); *Millennium Enters., Inc. v. Millennium Music, LP*, 33 F.Supp.2d 907, 911 (D.Or.1999). Therefore, a defendant's contacts with the forum state that were manufactured by the unilateral acts of a plaintiff are disregarded for personal jurisdiction purposes. *See Red Wing*, 148 F.3d at 1359; *Edberg*, 17 F.Supp.2d at 112. "To hold otherwise would allow a plaintiff to manufacture jurisdiction over a non-resident defendant in any forum, regardless of how inconvenient, even when the defendant has not purposefully directed any activity toward the forum state." *Edberg*, 17 F.Supp.2d at 112.

■ For these reasons, the price quotation prepared for Marianne Gifford cannot serve as a basis for exercising limited jurisdiction over Defendants GT and ABI. To generate such a price quotation, Marianne Gifford (or someone acting on her behalf) had to request it. Consequently, an individual operating at a residence owned by Plaintiff's counsel, and sharing the last name of Plaintiff's counsel, requested a price quotation for the very product that Plaintiff made the subject of this patent infringement suit less than four months later. The nexus of these facts indicates that the solicitation of this price quotation was an attempt to manufacture personal jurisdiction. As such, the Court, in order to comply with the requirements of due

process, will disregard this contact with Michigan for personal jurisdiction purposes. *See Elecs. For Imaging*, 340 F.3d at 1350; *Red Wing*, 148 F.3d at 1359; *ESAB Group*, 34 F.Supp.2d at 332–33; *Millennium Enters.*, 33 F.Supp.2d at 911; *Edberg*, 17 F.Supp.2d at 112. Furthermore, because Plaintiff has not offered any other basis to support the exercise of limited jurisdiction over Defendants GT and ABI, the Court concludes that limited jurisdiction is lacking with respect to Defendants GT and ABI in this action.

### B. General Jurisdiction

#### 1. Defendant GT

Plaintiff also claims that the Court has general jurisdiction over Defendant GT due to its two Internet sites and its sales into Michigan. Plaintiff contends that through the two sites, Defendant GT has conducted continuous and systematic business in Michigan and, as a result, meets the requirements of Michigan's general jurisdiction statute and of due process. *See* Mich. Comp. Laws § 600.711(3); *Red Wing*, 148 F.3d at 1359.

■ A close review of the two Internet sites reveals that, contrary to Plaintiff's argument, the sites do not justify the exercise of general jurisdiction over Defendant GT in this action. The Court will address the GT site (www.gourmettechnologies.com) first and then turn to the Gelato site (www.worldofgelato.com).

#### a. The GT Site

As discussed *supra*, due process only permits the exercise of personal jurisdiction when the defendant purposefully avails itself of the privilege of conducting activities within the forum state. *See Elecs. For Imaging*, 340 F.3d at 1350. Applying this standard to Internet sites that can be viewed from the forum state,

"[a] passive website is insufficient to establish purposeful availment for the purpose of due process." *Maynard v. Philadelphia Cervical Collar Co., Inc.*, 18 Fed. Appx. 814, 816–17, 2001 WL 929708 (Fed. Cir.2001) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419–20 (9th Cir. 1997); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336–37 (5th Cir.1999)). A "passive" website is one that simply provides information; customers cannot transact business (e.g., purchase products) on a passive website. *See Maynard*, 18 Fed.Appx. at 816–17. A website is passive even when it contains information regarding a company's products and services and displays the company's contact information. *See id.* at 817 (citing *Mink*, 190 F.3d at 336–37).

The GT site is a classic passive site because, while it provides information about Defendant GT's products as well as a means to contact Defendant GT, it does not allow a visitor to the site to purchase products or otherwise directly transact business over the site. *See* Resp. Exs. F, O, and S. Accordingly, the passive GT site is an insufficient ground to establish personal jurisdiction over Defendant GT. *See Maynard*, 18 Fed.Appx. at 816–17 (citing *Mink*, 190 F.3d at 336–37).[2]

**b. The Gelato Site**

On the other hand, Defendant GT's Gelato site is most definitely not a passive website, rather it is an "interactive" website: on the Gelato site, one can purchase products by providing credit card and shipping information. *See* Resp. Exs. N, P, Q, and S. Moreover, Defendant GT admits to conducting a sale of approximately $4,000.00 worth of gelato pans to a customer in Michigan through the Gelato site. Nevertheless, beyond this single sale, Defendant GT has not sold any goods in the State of Michigan through the Gelato site or by any other means. Further, the revenue from this sale constitutes less than 0.25 percent of Defendant GT's annual sales.

The Federal Circuit's recent decision, *Hockerson–Halberstadt, Inc. v. Propet USA, Inc.*, 62 Fed.Appx. 322 (Fed.Cir. 2003), is exceptionally helpful in addressing the Gelato site in this case. In that decision, the plaintiff brought an infringement suit against a large Washington-based retailer named Costco Wholesale Corporation in the Eastern District of Louisiana. *See id.* at 323–24. Costco's only contact with Louisiana was its interactive website. *See id.* at 337. Through its wesbite, Costco generated more than $32,000.00 in sales to customers in Louisiana during a certain relevant period. *See id.* These sales were generated through "possibly hundreds of transactions," but represented less than .00008 percent of Costco's total sales during the relevant period. *Id.* at 336–37.

Costco argued that these electronic sales over its website, or "e-commerce sales," to customers in Louisiana were "incidental or fortuitous contacts" with the forum state that were "both unrelated to the alleged infringement and insufficient in nature and number to qualify as substantial, continuous, and systematic contacts justifying the

---

**2.** In the general jurisdiction portion of its response brief, Plaintiff halfheartedly raises an additional limited jurisdiction argument: in an apparent attempt to argue that Defendant GT committed a tort for purposes of § 600.715(2), Plaintiff notes that, at one point in time, the GT website provided product information about the allegedly-infringing dispenser. *See* Resp. at 14 (citing Resp. Ex. F);

*see also* Resp. at 4. This apparent argument lacks merit because, even if § 600.715(2) was satisfied, due process is not satisfied for the same reasons articulated in the above text; merely posting product information on a passive website, without more, is insufficient to establish purposeful availment for the purpose of due process. *See Maynard*, 18 Fed. Appx. at 816–17.

exercise of general personal jurisdiction." *Id.* at 336. Costco further asserted "that to subject it to suit in Louisiana solely on the basis of a minuscule number of e-commerce sales unrelated to the cause of [the plaintiff's] alleged injury would offend traditional notions of fair play and substantial justice." *Id.*

The Federal Circuit agreed with Costco and affirmed the district court's dismissal of the suit against Costco for lack of personal jurisdiction. *See id.* at 336–38. The Federal Circuit first held that, because Costco's only contact with Louisiana was its interactive website and because only .00008 percent of Costco sales came from e-commerce sales in Louisiana during the relevant period, Costco did not have the requisite "minimum contacts with Louisiana to justify exercise of general jurisdiction over it in Louisiana." *Id.* at 337 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242–43 (9th Cir.1984); *Stairmaster Sports/Med. Prods., Inc. v. Pac. Fitness Corp.*, 916 F.Supp. 1049 (W.D.Wash.1995)). The Federal Circuit further held that even if Costco had the compulsory minimum contacts with Louisiana, "exercising personal jurisdiction over it would not comport with traditional notions of fair play and substantial justice." *Hockerson–Halberstadt*, 62 Fed.Appx. at 337. The Federal Circuit explained:

> To subject a nonresident corporate defendant, such as Costco, to suit in Louisiana solely on the basis of a minuscule number of e-commerce sales that are unrelated to the cause of the plaintiff's alleged injury would, we think, render established jurisdictional boundaries meaningless. Furthermore, other organizations that operate websites accessible to online purchasers would be deprived of the ability to predict with any certainty where they would be subject to

suit. Accordingly, we agree with the district court that the exercise of personal jurisdiction over Costco in this case would be inconsistent with traditional fairness considerations.

*Id.* at 338.

Applying these rulings from *Hockerson–Halberstadt* to the case at bar results in the same disposition. Like Costco, Defendant GT's only contact with Michigan is its interactive Gelato site; the site generated a single sale of $4,000.00 into Michigan, which was unrelated to Plaintiff's alleged injury. *See id.* at 336–38. Additionally, similar to the circumstances confronting Costco, this Michigan sale represents a minuscule amount of Defendant's GT business: less that .25 percent of Defendant GT's annual sales. *See id.* Furthermore, Defendant GT's situation presents a stronger case against the exercise of personal jurisdiction: in *Hockerson–Halberstadt*, Costco's contacts with Louisiana were estimated to be in the hundreds while here, by contrast, Defendant GT's sale over the Gelato website was its only contact with Michigan. *See id.* at 336. Accordingly, in this situation, Defendant GT does not have the necessary minimum contacts to justify the exercise of general jurisdiction over it in Michigan. *See id.* at 337. Furthermore, the exercise of personal jurisdiction over Defendant GT under these circumstances would not comport with traditional notions of fair play and substantial justice. *See id.* at 337–38. Therefore, due process requires that the Court dismiss this civil action against Defendant GT for lack of personal jurisdiction.

### 2. Defendant ABI

As to Defendant ABI, Plaintiff argues that, because of certain agency and/or alter-ego relationships, Defendants GT and ABI should be treated as one entity and

that, since general jurisdiction exists for Defendant GT, it also exists for Defendant ABI. Plaintiff offers no other reason to justify the exercise of general jurisdiction over Defendant ABI. Thus, assuming *arguendo* that, as Plaintiff contends, Defendants GT and ABI should be treated as one entity, the Court will also dismiss this action against Defendant ABI because, as discussed *supra*, due process requires that the Court dismiss this action against Defendant GT for lack of personal jurisdiction.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants Gourmet Technologies and Allied Brands International's motion to dismiss for lack of personal jurisdiction [docket entry 11] is **GRANTED.**

**IT IS FURTHER ORDERED** that, as to Defendants Gourmet Technologies and Allied Brands International, this civil action is **DISMISSED WITHOUT PREJUDICE.**

**SO ORDERED.**